[No. F043786. Fifth Dist. Feb. 14, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE LUIS SOLORZANO, Defendant and Appellant.

COUNSEL

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stan Cross and R. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GOMES, J.—

## ISSUE ON APPEAL

▮ While proceedings are pending to determine "if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner" (Pen. Code, § 1367, subd. (a)), can a court's refusal to hear the defendant's *Marsden*[1] motion require the reviewing court

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

to reverse the judgment and grant a new trial? On the facts here, we will answer that question in the affirmative and will reverse the judgment, remand the matter, and order a new trial with directions.

## BACKGROUND

From November 28, 2002, through December 2, 2002, appellant Jose Luis Solorzano robbed the employees of two convenience stores and two fast food restaurants. In each robbery, he threatened the employees but never physically injured anyone.

On January 7, 2003, a day before Solorzano's preliminary hearing was to begin, the court put on the record his counsel's concern that Solorzano was able to neither understand the nature of the proceedings nor assist in his defense. At his counsel's request, with no objection from the prosecutor, the court suspended criminal proceedings and ordered psychological evaluations of Solorzano. (Pen. Code, § 1368.)

On February 5, 2003, after receipt of two psychological evaluations, both of which opined that he was competent to stand trial, the court granted Solorzano's request for a jury trial on the issue of competency.

On April 14, 2003, after the court and counsel agreed to try the issue of competency to the court rather than to a jury, the court vacated the jury trial previously set and transferred the matter to a different court for trial later that day. After the transfer, the court asked if the defense intended to submit the matter on the psychological evaluations:

"[SOLORZANO'S COUNSEL]: That's correct, your Honor. If I could also add for the record that Mr. Solorzano has requested me to have a jury trial as to this issue. And I have exercised my right to actually have it submitted as to the two doctors' reports."

As soon as the court began to look for those reports in the file, Solorzano interrupted: "Excuse me, your Honor." The court asked his counsel if he wanted Solorzano to speak. After Solorzano and his counsel conferred, the following dialogue ensued between Solorzano and the court:

"[SOLORZANO]: With all due respect, I would like to fire my attorney due to the fact that yesterday he came to see me and I asked him if he could do something for me and he put up an argument. He's supposed to get medical records and school records, which he hasn't, he hasn't got, and he

had five weeks to get. And he's been arguing with me. I have conference (*sic*) of interest. I don't—I don't want him to represent me. With all due respect, your Honor.

"THE COURT: Yes. I'm not going to hear a *Marsden* motion at this stage of the proceeding, this is a 1368 proceeding under different rules. You can raise that issue later if found competent. If not, it is not going to matter. All right."

Neither counsel uttered a word in response to the court's abrupt refusal to hear Solorzano's *Marsden* motion. On the stipulation of the parties to submit the matter on the psychological evaluations, the court found him competent to stand trial and reinstated criminal proceedings against him.

On April 22, 2003, before the court to which his reinstated criminal proceedings were transferred, Solorzano made another *Marsden* motion:

"THE COURT: . . . This is on for pre-preliminary hearing. . . .

"[SOLORZANO]: Your Honor, with all due respect, I'd like to address the court. I'd like to fire my attorney. He's not helping me out on my defense.

"THE COURT: There's not a whole lot he can do at this state of the proceedings because you're looking at a hundred years to life in prison because of your six strike priors. The offer in this case is 25 years to life, and that's the minimum, minimum that you would be sentenced if you're convicted of any one felony offense.

"[SOLORZANO]: I just want to put on the record I'd like to dismiss my attorney."

That court held a hearing later that day on Solorzano's new *Marsden* motion:

"THE COURT: . . . [¶] . . . Mr. Solorzano, you've indicated a desire to fire your attorney. If you could please indicate to the Court why there's good cause to do that.

"[SOLORZANO]: Because your Honor, I have a learning and comprehending disability and my attorney doesn't explain to me things right. He visited me on the 17th and he put up an argument with me and he shows up late for

my courts. He doesn't explain to me what's going on, he's not helping me out on my defense, your Honor. I need somebody who's going to help me out.

"THE COURT: What is it you expect him to do that he's not doing?

"[SOLORZANO]: I asked him for my medical records, my high school records, my records when I was in the hospital, which he was supposed to have because I had a trial for competent, and he never brung [*sic*] those papers. He always, he argues with me and I have conflicts of interest with him. I can't never, he always comes and argues with me.

"THE COURT: [Solorzano's counsel], any comments?

"[SOLORZANO'S COUNSEL]: Judge, . . . there was a 1368 done on Mr. Solorzano's matter and he went to trial and was found competent . . .

"THE COURT: I don't believe there's good cause to fire your attorney and you did already have a hearing on the competency issue; you were found competent to stand trial. So I am going to deny your request for [*sic*] fire your attorney."

On May 6, 2003, Solorzano pled not guilty and denied the allegations against him. On May 21, 2003, he filed a motion to enter a plea of not guilty by reason of insanity. On June 3, 2003, the court granted his motion and he pled not guilty by reason of insanity.

On July 28, 2003, a jury found Solorzano sane and found him guilty of four counts of robbery and found true three personal knife use allegations as well as five strike prior allegations, one serious felony prior allegation, and one prison term prior allegation. (§§ 211, 212.5, subd. (c), 667, subd. (a), 667, subds. (b)–(j), 667.5, subd. (b), 1170.12, subds. (a)–(d), 12022, subd. (b)(1).[2]) On August 26, 2003, the court sentenced him to four consecutive 25-year-to-life terms plus a determinate term of six years and eight months.

## DISCUSSION

█ "A person cannot be tried or adjudged to punishment . . . if, as a result of mental disorder or developmental disability, [he or she] is unable to

---

[2] All statutory references are to the Penal Code.

understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) " '. . . [W]hile the trial court may not "proceed with the case against the defendant" before it determines his competence in a section 1368 hearing [citation], it may and indeed *must* promptly consider a motion for substitution of counsel when the right to effective assistance "would be substantially impaired" if his request were ignored. [Citation.]' (*People v. Stankewitz* (1990) 51 Cal.3d 72, 88 [270 Cal.Rptr. 817, 793 P.2d 23] [(*Stankewitz*)].)" (*People v. Harrison* (2001) 92 Cal.App.4th 780, 789 [112 Cal.Rptr.2d 91].)[3]

■ Even though "section 1368 mandates the suspension of ' "all proceedings in the criminal prosecution" ' once the court has ordered a hearing into the mental competence of the defendant," the Supreme Court held, "the Sixth Amendment right to effective representation compels a hearing and an order granting a motion for substitution of counsel when there is a sufficient showing that the defendant's right to the assistance of counsel will be substantially impaired if his request is denied. ([*Stankewitz, supra*, 51 Cal.3d] at pp. 87–88.)" (*People v. Canfield* (1992) 2 Cal.App.4th 1357, 1360–1361 [3 Cal.Rptr.2d 825] (*Canfield*), criticized on another ground by *People v. Hightower* (1996) 41 Cal.App.4th 1108, 1114–1116 [49 Cal.Rptr.2d 40], and disapproval on another ground recognized by *People v. Welch* (1999) 20 Cal.4th 701, 740 [85 Cal.Rptr.2d 203, 976 P.2d 754], in light of *Godinez v. Moran* (1993) 509 U.S. 389, 400–402 [125 L.Ed.2d 321, 113 S.Ct. 2680].) Hearing a *Marsden* motion during a competency hearing does not reinstate criminal proceedings against the defendant. (*Stankewitz, supra*, 51 Cal.3d at p. 88; *Canfield, supra*, at p. 1361.)

Solorzano's *Marsden* motion openly informed the court he wanted a substitution of attorneys because his counsel had not secured his medical and

---

[3] In *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56 [2 Cal.Rptr.2d 389, 820 P.2d 613], solely as analogous authority for the assumption that a court "retains subject matter jurisdiction despite restrictions on the scope of its authority," the Supreme Court made a single parenthetical reference to *Stankewitz* ("cf. *People v. Stankewitz* (1990) 51 Cal.3d 72, 87–89 [270 Cal.Rptr. 817, 793 P.2d 23] [court *may* first hold *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) to ensure effective assistance of counsel at competency hearing].).") (*Marks, supra*, at p. 67, italics added.) The Attorney General argues *Marks*'s parenthetical permissive language shows the Supreme Court's recognition that *Stankewitz* merely "*permitted* a trial court to hold a *Marsden* hearing" during a competency hearing. *Marks* did not purport to adjudicate any issue fairly within the scope of the holding in *Stankewitz*. Applying the familiar rule that a case is not authority for a proposition a court does not consider (*People v. Martinez* (2000) 22 Cal.4th 106, 118 [91 Cal.Rptr.2d 687, 990 P.2d 563]), we reject the Attorney General's argument.

school records despite having had five weeks to do so, because his counsel was arguing with him, and because his counsel had a conflict of interest with him.[4] His motion straightforwardly invoked the court's duty to hold a hearing on his *Marsden* motion before adjudicating his competency.[5] (*People v. Lucky* (1988) 45 Cal.3d 259, 281 [247 Cal.Rptr. 1, 753 P.2d 1052]; see *Stankewitz, supra,* 51 Cal.3d at p. 88; *Canfield, supra,* 2 Cal.App.4th at p. 1361.)

On the issue of prejudice, the Attorney General argues "that any error in failing to hold a *Marsden* hearing when [Solorzano] registered his first complaint was cured when he was given such a hearing a week later, represented by a new lawyer." The court that denied his later motion, however, did so not at his competency hearing, but at his reinstated criminal proceedings, solely on the rationale that he "did already have a hearing on the competency issue" and was "found competent to stand trial." On that record, we decline the Attorney General's invitation to equate one court's denial of a moot motion after a hearing during reinstated criminal proceedings with another court's denial of a ripe motion without a hearing during competency proceedings.

Both cases on which the Attorney General relies are inapposite. In one, we denied relief on the ground the defendants declined the court's invitation during competency proceedings to file a *Marsden* motion for prompt consideration afterward with other motions. (*People v. Harrison, supra,* 92 Cal.App.4th at pp. 789–790.) Here, the court simply refused outright to hear Solorzano's *Marsden* motion. In the other, the Fourth Appellate District, Division One, denied relief since the court's failure to consider the defendant's *Marsden* motion became harmless when he declined to reassert at a

---

[4] In a short argument without benefit of authority, the Attorney General claims "there was no indication whatsoever that [Solorzano's] right to effective assistance of counsel at the competency proceedings would be 'substantially impaired' unless new counsel was appointed" since "[t]he medical reports came back with recommendations that [he] be found competent" and "[t]here was no evidence to the contrary." As the Attorney General "does not expand on the issue with . . . citation to relevant authority," we "decline to address the issue. [Citations.]" (*People v. Hardy* (1992) 2 Cal.4th 86, 150 [5 Cal.Rptr.2d 796, 825 P.2d 781].)

[5] The record contains no intimation that the court satisfied preliminary concerns about Solorzano's incompetence to stand trial through discussions with Solorzano, his counsel, or the prosecutor. (Cf. *People v. Gallego* (1990) 52 Cal.3d 115, 162–163 [276 Cal.Rptr. 679, 802 P.2d 169].) Nor, in the absence of objection by the prosecutor and argument by the Attorney General, is the issue before us of whether substantial evidence of Solorzano's incompetence to stand trial was in the record when the court suspended criminal proceedings and commenced competency proceedings. (Cf. *People v. Harrison* (2005) 125 Cal.App.4th 725, 728–736 [23 Cal.Rptr.3d 83].)

later hearing the reasons for his motion. (*People v. Lloyd* (1992) 4 Cal.App.4th 724, 731–732 [6 Cal.Rptr.2d 105].) Here, the reasons Solorzano articulated during his reinstated criminal proceedings on April 22, 2003, were essentially identical to those he expressed during his competency proceedings on April 14, 2003.

■ On the issue of prejudice, *Marsden* is our guide. "On this record we cannot ascertain that [Solorzano] had a meritorious claim, but that is not the test. Because [he] might have catalogued acts and events beyond the observations of the trial judge to establish the incompetence of his counsel, the trial judge's denial of the motion without giving [him] an opportunity to do so denied him a fair trial. We cannot conclude beyond a reasonable doubt that this denial of the effective assistance of counsel did not contribute to [the finding he was competent to stand trial]. (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)" (*Marsden, supra,* 2 Cal.3d at p. 126.)

■ A criminal trial of a defendant incompetent to stand trial violates due process. (*Godinez v. Moran, supra,* 509 U.S. at p. 396; *People v. Hayes* (1999) 21 Cal.4th 1211, 1281 [91 Cal.Rptr.2d 211, 989 P.2d 645].) Now, almost two years after April 14, 2003, when the court found Solorzano competent to stand trial after abruptly refusing to hear his *Marsden* motion on whether his appointed counsel was rendering effective assistance at his competency hearing, we can but speculate how things might have been different had the court instead safeguarded his constitutional rights to effective assistance and due process by granting him the *Marsden* hearing to which he was entitled: "For want of a nail the shoe is lost, for want of a shoe the horse is lost, for want of a horse the rider is lost." (Herbert, Jacula Prudentum (1651).)

"Given the inherent difficulties" of "retrospectively determining an accused's competence to stand trial," due process compels us to reverse the judgment, remand the matter, and order a new trial. (*Drope v. Missouri* (1975) 420 U.S. 162, 183 [43 L.Ed.2d 103, 95 S.Ct. 896]; *Pate v. Robinson* (1966) 383 U.S. 375, 387 [15 L.Ed.2d 815, 86 S.Ct. 836]; see *Dusky v. United States* (1960) 362 U.S. 402, 403 [4 L.Ed.2d 824, 80 S.Ct. 788]; § 1260.)

## DISPOSITION

The judgment is reversed, the matter is remanded, and a new trial is ordered with directions that if the issue of Solorzano's competency to stand trial were again to ripen into competency proceedings and if during the

pendency of those proceedings he were again to make a *Marsden* motion articulating his dissatisfaction with, and requesting substitution of, counsel for those proceedings, the court shall promptly hear that motion before terminating those proceedings.[6] (§ 1260.)

Buckley, Acting P. J., and Cornell, J., concurred.

---

[6] Our holding moots Solorzano's arguments about jury waiver at the competency hearing, peremptory challenges of prospective jurors, his pretrial lineup and suppression motions, and sentencing.